UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | |
|---|---|
| NINA CAIN, Individually, and<br>as ADMINISTRATRIX OF THE<br>ESTATE OF SHELBY CAIN, | )<br>)<br>) |
| | ) Civil Action No. 5:04-109-JMH |
| Plaintiffs, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| EQUITY ONE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**       **       **       **       **

This matter is before the Court on two motions — a motion for summary judgment filed by Defendant Equity One, Inc. ("Equity One") [Record No. 30] and a motion for summary judgment filed by Defendants North Central Life Insurance Company ("North Central") and American General Finance Management Corporation; American General Financial Services of America, Inc.; and American General Financial Services, Inc. (collectively "American General") [Record No. 27]. Plaintiffs filed a joint response to both motions [Record No. 32] to which North Central and American General replied [Record No. 33]. The time for Equity One to reply has expired, and this matter is now ripe for review.

**BACKGROUND**[1]

In October of 2000, Plaintiff Nina Cain ("Mrs. Cain") and her husband, Shelby Cain ("Mr. Cain"), agreed at auction to purchase a

---

[1] The Court notes that, in response to the instant motions, Plaintiffs adopted the statements of facts contained in Defendants' memoranda of law.

home and approximately five acres of land in Brodhead, Kentucky, for the sum of $72,000.  On November 3, 2000, the Cains sought financing from Defendant Equity One to purchase the home and land. Thereafter, on November 15, 2000, Equity One loaned the Cains the principal sum of $72,420.15.  As part of the loan application process, Equity One inquired as to whether the Cains wished to obtain a credit life insurance policy to secure their loan with Equity One.  The Cains agreed, and Equity One provided them with an application for credit life insurance.  The Cains filled out the application, and Equity One forwarded it to the prospective insurer, Defendant North Central.[2]

After reviewing the Cains' application, North Central account representative Joyce Railey ("Railey") determined that, because the combined life policy would exceed the automatic issue limit of $25,000, North Central's underwriting requirements mandated that the Cains provide certain health information.  Accordingly, Railey forwarded a letter accompanied by a health application for both Mr. and Mrs. Cain to the address listed on the Cains' initial credit life insurance application.  Mrs. Cain completed her health application in full and returned it to North Central in January of 2001.

Prior to purchasing the home and land in Brodhead, the Cains

---

[2] The American General Defendants are merely affiliates of Defendant North Central.

lived in Richmond, Kentucky.  Mrs. Cain testified that she and Mr. Cain moved from their home in Richmond to the new home they purchased in Brodhead on December 26, 2000.  They left a forwarding address with the local post office so that any mail sent to their Richmond address would be forwarded to their new home in Brodhead. Moreover, Mrs. Cain testified that after she and Mr. Cain moved, their son resided in their old home in Richmond and would have provided them with any mail addressed to them that arrived at the Richmond home.  Despite Mrs. Cain's testimony that they moved to Brodhead in December of 2000, however, on the health application that she filled out and returned to North Central one month later, she listed her address as Richmond, Kentucky, just as she had on the initial credit life insurance application.

Mr. Cain also filled out his health application and returned it to North Central; however, he omitted two requested pieces of information — his height and weight.  Due to the incompleteness of his application, North Central's medical underwriting department wrote to Mr. Cain on January 31, 2001, and sent the letter to the Richmond address — the only address that the Cains had ever provided to Equity One or North Central.  The letter informed Mr. Cain that he must provide the omitted information to complete the underwriting process.  After receiving no response, North Central's underwriting  department mailed an additional letter dated March 2, 2001, to the Richmond address advising that North Central would be

3

"unable to make a final decision regarding [Mr. Cain's] coverage" because he had not provided all required information." (North Central's Memo. in Supp. of Summ. J. at Ex. F.) A statement at the bottom of the letter read, "If this information is not received within the next 30 days, your application will be canceled." (*Id.*)

North Central mailed another letter to the Richmond address on April 1, 2001, after having received no response to the March letter. The April letter informed Mr. Cain that his application for coverage could not be accepted because of the outstanding information. A statement at the bottom of the letter read, "If this information is received, we will reconsider our position and you will be advised accordingly." (*Id.* at Ex. G.) Finally, in a letter dated June 8, 2001, North Central wrote to the Cains informing them that they had no effective coverage. The letter stated, "IN REFERENCE TO OUR PREVIOUS LETTER REGARDING CREDIT INSURANCE PROTECTION, WE HAVE NOT RECEIVED THE REQUESTED INFORMATION. YOUR CERTIFICATE HAS BEEN VOIDED AND NO COVERAGE EXISTS." (*Id.* at Ex. H.) The letter further instructed that the premiums that Mr. and Mrs. Cain had already paid would be credited to their principal balance on their loan with Equity One, and Equity One in fact credited the amount to the principal balance of the loan.

Mr. Cain passed away on March 4, 2003. After his death, his daughter contacted Equity One to inquire about credit life

insurance coverage at which time, Equity One informed her that no such coverage existed for Mr. Cain.  Mrs. Cain testified that it was not until that point that she realized that Mr. Cain had no effective credit life insurance policy.  On February 9, 2004, Mrs. Cain commenced this cause of action on behalf of herself and her deceased husband's estate.  Defendants subsequently removed the action to United States District Court for the Eastern District of Kentucky on March 5, 2004.  Mrs. Cain alleges that she and her deceased husband both obtained credit life insurance to cover the mortgage on the Brodhead and that North Central, at some point in time, cancelled the policy.  She further alleges that Defendants' failure to pay off the loan with Equity One with the credit life insurance proceeds constituted breach of contract, fraud, a violation of the Kentucky Unfair Claims Settlement Practices Act, and a violation of the Kentucky Consumer Protection Act.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving

party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant establishes a prima facie basis for summary judgment, the nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon mere allegations or denials but must set forth specific facts showing the existence of a material issue for trial. *Anderson*, 477 U.S. at 256-57. Moreover, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### A.  Breach of Contract

Plaintiffs first allege that Defendants breached a contract between them and Mr. Cain by refusing to pay out the proceeds of the credit life insurance policy that Plaintiffs allege Mr. Cain purchased from Defendants. To make out a claim for breach of contract under Kentucky law, "a plaintiff must show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). Under basic contract principles, "[a] valid offer and acceptance

6

requires a mutual manifestation of assent, a meeting of the minds as to the terms of the contract." *Whitaker v. Associated Credit Servs., Inc.*, 946 F.2d 1222, 1226 (6th Cir. 1991). Additionally, where the formation of a contract is dependent upon the approval of a third party, such approval is considered a condition precedent to formation of the contract. *Hopkins v. Performance Tire & Auto Serv. Ctr., Inc.*, 866 S.W.2d 438, 441 (Ky. Ct. App. 1993).

The Court finds that no contract of credit life insurance existed between North Central or Equity One and Mr. Cain. Equity One offered Mr. Cain *the opportunity to apply* for credit life insurance. The application for credit life insurance states in the middle of the page, "You are applying for the credit insurance marked above" and at the bottom of the page are the words "PROPOSED INSURED'S COPY." (North Central's Memo. in Supp. of Summ. J. at Ex. A.) Moreover, even Mrs. Cain's testimony suggests that she believed the application to be just what it was — an *application* for insurance. Furthermore, after the Cains submitted their application, North Central mailed them a health application that specifically stated, "SHALL INCUR NO LIABILITY UNTIL THIS APPLICATION IS *APPROVED* BY [NORTH CENTRAL] AT ITS HOME OFFICE." (*Id.* at Ex. C (emphasis added).) A collective reading of this evidence yields the conclusion that North Central's approval of the application for credit life insurance was a condition precedent to the formation of the contract of insurance.

7

Moreover, upon receipt of the application, North Central, via several letters to Mr. Cain, explicitly stated that the application would not be approved until Mr. Cain submitted certain health information. Regardless of the reason therefore, Mr. Cain never submitted the requested health information in its entirety and, thus, North Central never approved the application. The condition precedent — approval by North Central — was never satisfied, and a valid contract was never formed. Because no contract for credit life insurance existed between Mr. Cain and either Equity One or North Central, Plaintiffs' breach of contract claim is without merit.

**B.   Kentucky Unfair Claims Settlement Practices Act Claim**

Plaintiffs next allege a violation of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"), KRS 304.12-010 *et seq.* In *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), the Kentucky Supreme Court "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)(citing *Wittmer*, 864 S.W.2d at 890). Pursuant to *Wittmer*, the three required elements to maintain a bad faith claim, under the UCSPA and otherwise, are as follows:

> "(1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the

8

> insurer must lack a reasonable basis in law or
> fact for denying the claim; and (3) it must be
> shown that the insurer either knew there was
> no reasonable basis for denying the claim or
> acted with reckless disregard for whether such
> a basis existed."

*Wittmer*, 864 S.W.2d at 890 (quoting *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-47 (Ky. 1986)(Leisbon, J., dissenting)).

However, "in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith." *Kentucky Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004). As the Kentucky Supreme Court stated:

> The gravamen of the UCSPA is that an insurance
> company is required to deal in good faith with
> a claimant, whether an insured or a third-
> party, with respect to a claim which the
> insurance company is *contractually obligated*
> to pay. Absent a contractual obligation,
> there simply is no bad faith cause of action,
> either at common law or by statute.

*Davidson*, 25 S.W.3d at 100. Because the condition precedent to the formation of Mr. Cain's contract of credit life insurance was not satisfied, neither Equity One nor North Central had a contractual obligation to pay out the proceeds of the alleged insurance policy. Accordingly, Plaintiffs' UCSPA claim fails as a matter of law.

## C. Kentucky Consumer Protection Act Claim

Plaintiffs next allege that Defendants violated the Kentucky Consumer Protection Act ("KCPA") by failing to pay the proceeds of the credit life insurance policy that Plaintiffs alleged Mr. Cain

purchased.

The KCPA provides in relevant part:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action.

KRS 367.220(1). The KCPA "provides an insured . . . with a remedy against the conduct of his insurance company, if such conduct constitutes an unlawful act as defined in KRS 367.170." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)(citing *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819 (Ky. 1988)). Unlawful acts are defined as "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS 367.170(1). Additionally, "the purchase of an insurance policy is a purchase of a 'service' intended to be covered by the [KCPA]." *Stevens*, 759 S.W.2d at 820. The *Stevens* court stated, "An insurance policy is nothing more and nothing less than a contract providing for delivery of financial services as specified in the policy when loss occurs as described in the policy. As such it is in the same class as other financial services." *Id.* at 821.

The *Stevens* holding, however, necessarily implies a requirement that is lacking in the instant case — a contract of insurance that existed between the parties. Moreover, the United

States District Court for the Western District of Kentucky has held that the KCPA does not apply to a plaintiff's cause of action arising out of the wrongful denial of insurance benefits. *Cummings v. Thomas Indus., Inc.*, 812 F. Supp. 99, 100 (W.D. Ky. 1993). Although not termed as such in Plaintiffs' complaint, Plaintiffs' claim essentially amounts to just that.  Mr. Cain was denied insurance benefits yet now claims that he entitled to what would have been the proceeds of such benefits.  It is beyond reason that the Court should hold that Mr. Cain "purchased" a policy of insurance sufficient to invoke the protection of the KCPA where the condition precedent to the contract of insurance was never satisfied.  Accordingly, Plaintiffs' KCPA claim is without merit.

**D.    Fraud Claim**

Plaintiffs finally allege that Defendants' conduct constituted fraud under Kentucky law.  A plaintiff alleging fraud under Kentucky law must establish by clear and convincing evidence the following:  (1) a material representation, (2) that is false, (3) that is "known to be false or made recklessly," (4) that is "made with inducement to be acted upon," (5) that is "acted in reliance thereon," and (6) that causes injury.  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Plaintiffs have not submitted any evidence showing that the elements of fraud have been satisfied.  Nothing in the instant facts even suggests that North Central or Equity One made false,

material representations to Plaintiffs.  Rather, the evidence indicates that any injury that Mr. Cain suffered resulted from his failure to submit the health information required by the form submitted to him by North Central.  Because Plaintiffs have failed to submit evidence to satisfy the elements of Plaintiffs' fraud claim, Defendants are entitled to summary judgment on this claim as well.  *Celotex*, 477 U.S. at 322.

**E.   Plaintiffs' Agency and Waiver Arguments**

Plaintiffs additionally argue that Equity One was acting as an agent of North Central as the term "agent" is defined in KRS 304.9-020(1) and that North Central, therefore, is responsible for the acts of Equity One.  However, the Court's holdings on all of Plaintiffs' claims are unaffected by this argument.  Regardless of whether Equity One acted in the capacity of an agent for purposes of selling, soliciting, or negotiating credit life insurance contracts, Plaintiffs have failed to establish the existence of a life insurance policy and have failed to satisfy the elements of their claims.  In fact, Plaintiffs have not submitted any evidence that even suggests wrongful conduct on the part of Equity One or North Central.

Moreover, regardless of whether, as Plaintiffs suggest, Equity One should have provided to Plaintiffs the health information application when Plaintiffs applied for credit life insurance, the application for credit life insurance, which the parties knew to be

12

merely an application, created a condition precedent to formation of the contract — North Central's approval of the application. After North Central requested health information from Mr. Cain, the obligation to provide such information rested on Mr. Cain. His failure to provide the correct information resulted in the condition precedent never having been satisfied. Plaintiffs also did not provide either North Central or Equity One with their new address at the time of their move, and the Courts will not fault Defendants for Plaintiffs not having received the multiple letters that Defendants sent to Plaintiffs. Furthermore, Equity One credited the premium paid by Plaintiffs to the loan amount, and Plaintiffs' monthly account statement would have indicated the credited amount.

Plaintiffs' conclusory arguments that questions of fact remain regarding whether North Central "accepted" Plaintiffs' application and whether Equity One waived the health information requirements are entirely unsupported by the evidence. The fact that Equity One did not provide the health application when Mr. and Mrs. Cain applied for credit life insurance is without consequence. Equity One did not enter into a contract of insurance with Mr. and Mrs. Cain but merely offered the Cains the opportunity to apply. Formation of the contract was subject to North Central's approval of the application for credit life insurance, and North Central clearly indicated that it would not approve the application absent

13

the required health information.  Thus, the argument that Equity One waived the health requirements at the outset is without merit. Because Plaintiffs have failed to submit any facts tending to support their argument that questions of fact remain and have otherwise failed to submit evidence tending to support the claims in their amended complaint, Defendants are entitled to summary judgment. *Anderson*, 477 U.S. at 256-57.

**CONCLUSION**

Accordingly, **IT IS ORDERED**:

(1)  that Defendant Equity One's motion for summary judgment [Record No. 30] be, and the same hereby is, **GRANTED;**

(2)  that Defendants North Central's and American General's motion for summary judgment [Record No. 27] be, and the same hereby is, **GRANTED;** and

(3)  that the claims in Plaintiffs' amended complaint [Record No. 12] be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

This the 21st day of April, 2005.



**Signed By:**

*Joseph M. Hood*

**United States District Judge**